**Slip Op. 03-37**

# UNITED STATES COURT OF INTERNATIONAL TRADE
_____

_____
                         :

PRODOTTI ALIMENTARI      :
    MERIDIONALI, S.R.L.,    :

                        :

       Plaintiff,      :

                        :

       v.           :      Court No. 01-00020

                        :      **Public Version**

UNITED STATES,       :

                        :

       Defendant,    :

                        :

_____  :

[ITA's remand determination sustained.]

Dated: April 1, 2003

       Riggle and Craven (David J. Craven and David A. Riggle) for plaintiff.

       Robert D. McCallum, Jr., Assistant Attorney General, David M. Cohen, Director, Velta
A. Melnbrencis, Assistant Director, Commercial Litigation Branch, Civil Division, United States
Department of Justice (David Harrington), Michele D. Lynch, Office of Chief Counsel for Import
Administration, United States Department of Commerce, of counsel, for defendant.

## OPINION

**RESTANI, Judge:**

       This matter is before the court following its decision in Prodotti Alimentari Meridionali,

S.r.l. v. United States, slip op. 02-68 (Ct. Int'l Trade July 16, 2002) (hereinafter "Prodotti I"), in

which the court remanded a single aspect of the final determination made by the United States

Department of Commerce ("Department" or "Commerce") in its five-year sunset review of

antidumping duty orders in Certain Pasta from Italy: Final Results of Antidumping

Administrative Review, 65 Fed. Reg. 77,852 (Dep't Commerce Dec. 13, 2000). Familiarity with

that decision is presumed. The sole remaining issue involves Commerce's classification of pasta

shapes for the purpose of comparing normal value ("NV") to export price ("EP") or constructed

export price ("CEP").[1]

## DISCUSSION

In constructing its methodology, Commerce divided pasta sold in the U.S. and

comparison markets into seven (7) discrete product or shape categories. This model match

methodology was initially developed during the original investigation after consultation with

interested parties. In defining the various categories, Commerce considered four factors: pasta

shape, type of wheat, additives, and enrichment. Results of Redetermination Pursuant to Court

Remand at 2 (Dep't of Commerce Aug. 29, 2002) ("Remand Determination"). Commerce

placed particular emphasis on pasta shape, noting that "pasta producers typically dedicate

specific production lines to either long or short pasta cuts, and that standard and specialty shapes

within long and short cuts are determined according to production line speed, which is a major

determinant that affects production costs." Id.

Plaintiff Prodotti Alimentari Meridionali, S.r.l. ("Prodotti") does not challenge

Commerce's consideration of pasta shape generally. Instead, Prodotti argues that Commerce's

---

[1] In Prodotti I, Commerce requested a remand "for the limited purpose of reviewing the record with respect to shape categories." Prodotti agreed that a remand was in order, although Prodotti requested that the court direct Commerce to merge two shape categories into one. The court declined to issue specific remand instructions at that time. On remand, Commerce continued to separate these pasta products into different shape categories. See Results of Redetermination Pursuant to Court Remand ("Remand Determination").

application of that methodology here is flawed because the products classified under two of the categories, shape category 5 (regular short cuts) and category 7 (soup cuts), are nearly identical and, therefore, the distinction between the two is "so imprecise as to be meaningless." In support, Prodotti primarily argues that the production speeds of the two categories are very similar and that the shapes are produced on the same machine. Prodotti points out that short cuts and soup cuts (or soupettes) are consequently treated as one product in Prodotti's internal product coding system. Prodotti also argues that the products are sold and used interchangeably.[2] For these reasons, Prodotti claims that there is no meaningful distinction between these products and requests that the court order Commerce to merge the two categories.

Relying upon Prodotti I, Commerce first responds that Prodotti's claim fails because Prodotti did not establish that it was prejudiced by the pasta shape classification in the investigation below. Commerce misreads Prodotti I. The court did not require that a respondent establish specific prejudice as an element of its case. The court found that, where the government expressly argues in opposition to plaintiff's claim that a proposed change in the methodology would have no effect on the margin at issue, the plaintiff "must explain how it likely would benefit from a particular claimed revision." Prodotti I at 5 (emphasis added). The purpose behind doing so was to prevent plaintiffs from raising challenges to a determination that could have no effect on the final outcome (the margin) and would only serve to delay the administrative process and preclude finality of court judgments – for years in many cases.[3] In

---

[2] In its initial brief, Prodotti argued that the product Ditali can be used in a soup or can be used in a dish of prepared pasta. Maybe so, but Ditali is commonly known as soup pasta.

[3] In Prodotti I, Plaintiff had raised several arguments that appeared to have no effect on the outcome of the case. For example, Prodotti challenged a series of currency conversions that

Prodotti I, Commerce did not argue that Prodotti was not prejudiced, it simply requested remand.

Commerce waived this argument. Prodotti has nevertheless explained how its proposed revision

would affect the margin.[4] Accordingly, the court rejects Commerce's argument.

As to the merits, Commerce does not dispute that, in some factories, these two pastas cuts

are produced on the same production machines at similar productions speeds.[5] Commerce

instead responds that these considerations are not determinative. As Commerce explains,

production speed, while important, is not conclusive because "virtually all of [Prodotti]'s pasta

production occurs at similar production speeds . . . ." Remand Determination at 4. In support,

Commerce points out that another category is produced at a similar line speed yet its

classification is not challenged by Prodotti.[6] Commerce also points out, and Prodotti does not

did not change the value of the related sales in any way. Id. at 6-7. Prodotti nonetheless requested a remand based upon these conversions that did not harm Prodotti.

[4] Prodotti has explained that the margins for products sold in shape categories 5111/7111 would shift from [          ] to [          ]. This category was selected by Prodotti as a sample and contains only a limited number of sales to the U.S. market during the period of review ("POR"). Despite this and the fact that the change is relatively small, the court nonetheless concludes that Prodotti has at least provided some reason for its challenge.

[5] For example, the average line speed for pasta cut 5 at Prodotti's [          ] factory was [          ] seconds while the average line speed of pasta cut 7 was [          ]. Exhibit D-11(b)(RR) of Prodotti's Second Supplemental Response. At the [          ] factory, the average line speed for category 5 was [          ] while the average line speed of category 7 was [          ]. Id. At the [          ] factory, the average line speed for category 5 was [          ] while the average line speed of category 7 was [          ]. Id. Prodotti argues that the [
                                                                              ].

[6] Commerce explains that, at one plant, [          ], the average line speed of [
                                        ] is [          ]. Exhibit D-11(b)(RR) of Prodotti's Second Supplemental Response. That is [
                                        ], yet Prodotti does not suggest that these two products should be merged. That is presumably because there are other differences that exist, [
                                        ]. This supports the conclusion that line speed, while

dispute, that two different pasta producers could use different machines to produce the same pasta product. Therefore, the court agrees that similarities in the type of machine used should not be determinative. While Prodotti does not argue that these two considerations, speed and type of machine, are by themselves conclusive, Prodotti nevertheless relies upon them to establish that these categories are functionally identical.

While there are similarities between the two products, the court ultimately finds Prodotti's position unpersuasive. The court finds no inherent error in Commerce's model match methodology, a methodology developed with the parties and used from the outset of the investigation. The court finds that a methodology seeking to compare pasta products based upon shape, ingredients used, and method of production is a reasonable one. Even if certain products are produced on the same machines at similar speeds, that does not necessarily establish that they are the same product, even if they might be used in a similar manner. Prodotti has not demonstrated a flaw in the model match methodology which requires its amendment.[7]

_____

considered, is not determinative in classifying pasta products.

    [7] This is not a case where plaintiff seeks a reclassification of its pasta from one model match category to another.

## CONCLUSION

For the reasons discussed, Plaintiff's motion for judgment on the agency record is hereby denied.  The court sustains Commerce's Remand Determination, finding that is supported by substantial evidence and in accordance with law.  So ordered.

_____
Jane A. Restani
Judge

Dated:  New York, New York

This 1st day of April, 2003.

ERRATUM

<u>Prodotti Alimentari Meridionali, S.r.l. v. United States</u>, Court No. 01-00020, Slip Op. 03-37 dated April 1, 2003.

Page 1:       On the 22nd line, replace "five-year sunset review" with "third administrative review".

June 12, 2003